There are three major questions in this case. First, were the appellants appointed to the The second question is, were the appointments temporary or were they permanent? The third major question is, is the approval of the mayor, the controller, and the Human Resources Department required to finalize a civil service appointment in San Francisco? I've got three short answers. As to the first one, appellants were appointed to lieutenant. Second question, the appointments were permanent. Third question, the approval of the mayor, the controller, and the Human Resources Department was not required. As regards to the first questions, were appellants appointed to the rank of lieutenant? There are four elements to an appointment under the city's civil service system as articulated in the San Francisco Charter. You have to have a vacant position. There has to be an eligible list that is still in effect. The department head has to make a requisition, and the appointing officer has to fill the position. All four elements were met in the case of the appellants. Now, these individuals were quite far down on the eligible list. Is that right? Pardon me, Your Honor. These individuals were quite far down on the eligible list. Yes, they were, but the eligible list was using a band of scores. The police chief was not required to appoint anybody in rank order, and the Were they within the band? It didn't seem to me that they were. Yes, they were within the band, and almost all of the individuals above them on the band had been appointed. It was at the end of the eligible list, and the eligible list had been in existence for a number of years. And so, even though they were ranked 85, something like that, there had been something like 65 or 70 appointments from that list. So they were within the band, and they were reachable by the police chief. Well, tell me about exactly what the band was then, because the chart I had showed them being below it. Well, I don't know if I can answer that question, but there was a band, and they were within the band, and the city has not made any argument that they were not within the band. And I think the band may have been down to 95 or 100 or maybe even more than that. But a substantial number of appointments had already been made from that eligible list, and that eligible list expired in June of 2000. So they were the last three individuals appointed from that list. The next eligible list was into effect the day that this one expired, or I should say this one expired the day that the other one went into existence in June 13th. Can the chief make the appointment of anybody on that list, regardless of where the person is located? Yes. In other words, you could pick the last person in preference to the first person. The certification process established a ranking of number one to number something that I don't happen to know off the top of my head, but assume it was 100, and the chief could appoint anybody that falls within that band. Now, the list that I have shows the band fixed at 76.33 and that Stasko was 76.13, so he was not within the band. I don't have that piece of evidence in front of me, Your Honor, but I do not recall that the city has ever contended that they were not within the band and that it was not a legitimate appointment on that basis. This may be the new list. Oh, you mean the new list? Yes. Now, Lieutenant Stasko or Appellant Stasko was appointed from the new list about two years or three years after the list that he was originally appointed expired. So the appellants were not on the new list, but they were appointed legitimately from the older list, which was adopted in 1994 and did not expire until June of 2000. Are all the appellants still with the force? Oh, pardon me, Your Honor? Are all of the appellants still with the force? Yes, they are. Yes, two of the appellants are still sergeants, and Appellant Stasko, as I said, is a lieutenant. Having been later promoted from another list. Yes, he was promoted from the next list. Is the case moot as to him? Oh, pardon me? Is the case moot as to him? It's not moot because his seniority date should be March of 2000 and not the date that he was appointed the second time. So the case is not moot as to him. He's entitled to back pay. Okay. How were your clients informed? I take it there was a point in time when they told, were told you can hit the street with lieutenant bars and not sergeant stripes. Is that right? Yes. How were they told? They were told by a phone call that they were out, that they were being demoted. They were not informed. Going back to the first, there came a point in time when they were wearing sergeant stripes but they were told as of tomorrow or next week or whatever, you can wear lieutenant bars. Yes. How were they told? They were told verbally, but there was also official action, and the record is a copy of a personnel order. The police department proceeds from any kind of major personnel transaction by issuing a personnel order, and their names appear on personnel orders number six and number seven. And on personnel order number seven, I think it's page 63 or 64 in the record, their names appear as being promoted to LW, LP, Q60, lieutenant, and that's how they were informed officially, and that was the official act. That order was signed by the police chief, and it becomes a mandatory order for everybody in the department to comply with. And that's what we've ---- Did that initial indication tell them that this was a like work, like pay position? The LW, LP letters do stand for like work, like pay. That's correct. But there are really two forms. What does that mean? It's not clear what it means. To the appellants and from our case, that means it's a permanent promotion. You say that that really means nothing. Under your theory, that means nothing, LW, LP. Well ---- I mean, it stands for like work, like pay, but it really has no significance because it's a permanent. That's right. That's right. Because in reality, if someone, you know, something like 100 or 150 others, both before the appellants and afterward, that had been promoted and the LW, LP promotion appeared in the order, they were never demoted. These are the only three individuals over a long period of time that were ever demoted. Now, I think it means that something like ---- I guess what happened in this case is that the police chief somehow waited for the approval of the requisition, which we're arguing is not necessary. The mayor or the controller do not have a role in making appointments, and they don't have a role in having to approve a requisition, which is one of the major issues in this case. And so that LW, LP promotion apparently must mean that the police chief issues a requisition. It somehow doesn't get processed, and so they don't remove the LW, LP until the requisition is processed. There is another form of LW, LP in the San Francisco Police Department, and that is used when a sergeant takes the place of a lieutenant for a day or for three days or for a week if the lieutenant is on vacation. And it is used very commonly in the police department as like work, like pay. So there's really two forms of it. One is this promotion, LW, LP promotion, which is not a daily assignment taking the place of somebody. The LW, LP promotion is someone being placed into a vacant position from an eligible list. That's what this is. On a temporary deal, do they still fill out a piece of paper and show that the person is doing an LW, LP? Yes. In order to get paid, if you're taking the place of a lieutenant that's absent for a day or two days, you have to fill out a green card and get it signed by the lieutenant or the captain, and that's how you get paid. And you do that at the same district station. If you're promoted as an LW, LP promoted, you get moved to a different district station, and you're not required to fill out a green card in order to get paid because you've been promoted, and that's the distinction between those two kinds of assignments. The city argued that these LW, LP promotions were the green card promotions. That's what they've argued. But if we look at Section 16 of the Memorandum of Understanding, it very clearly says that an individual can get assigned to the position of a higher rank and get paid like work, like paid basis, but in order to do that, they have to fill out the green card, and it's only a temporary situation. It's not something where you're moved to a different district station, and you're given a uniform, and you're congratulated, and you have to take a medical test, and you're, in all respects, treated like a permanent lieutenant. This issue went to arbitration? This matter did go to arbitration. Unfortunately, the arbitrator ruled that the grievance was untimely filed, and so the arbitrator never reached the merits of any of these issues. So he just didn't rule on it at all, is that right? Oh, pardon me? He made no substantive ruling at all? No. He did not rule on the charter issues that we raised. But we had asked him to make a decision on whether or not Charter Section 8.329 applied, and he declined to do that. So there is no ruling in that arbitration decision on that issue. What was the position of the union on that? It was not a union grievance. The police officers' association refused to represent the appellants, and from our point of view, they had a conflict of interest because one of the members of their board was on the new eligible list and essentially was given one of these positions. So they bowed out from the beginning. They didn't support your client's position? They did not support us, and it was disappointing because there's just a clearly written MOU section, Section 21, that we think covers this transaction, that when you're appointed from an eligible list, it's a permanent appointment. And so we thought that the union should have supported the members. But I think they, as I said, I think they had a conflict of interest. Under your position, do you say that it's not necessary for the mayor and who is it, the controller, to sign these promotions at all? Yes, that's correct. That's just a ministerial issue, but the person gets his promotion regardless of whether the mayor signs it. Yes. There's some language in the annual salary ordinance that says that requisitions have to be approved by the mayor. And then if you keep reading that salary ordinance, it gives the mayor two days to disapprove. It gives the controller the same two days to disapprove. And then the language in that ordinance says after that period of time, the Human Resources Department shall process the appointment. Now, it looks like they may not have done that in this case, and so the city has argued that the requisitions issued by the police chief were never approved, so therefore that invalidated the appointment. But that's not the civil service scheme. And if you take a look at the cases that we've cited, the Doar case, the McGillicuddy case, the Jenkins case decided by this court, it says that you can't call an appointment, a temporary appointment after the fact just because you don't want to, you know, just because you don't want to recognize that it's a permanent appointment. What about the argument that these people were in a probationary period if they were not temporary, if it was a permanent appointment, they still would have been on probation for a year? Well, yes, Your Honor. The probationary period is not even spelled out in the record. And as a matter of fact, the police department has always afforded promoted employees due process when being demoted. And there's some part of the record that we included that has a probationary lieutenant who was demoted for cause. Section 8.343 of the charter makes no distinction between a probationary employee and a nonprobationary employee in terms of due process in order for an employee who is not an entry-level employee to be disciplined or to be demoted or to be deprived of their property. You have to follow the charter section, Charter Section 8.343. And as a matter of fact, there's no other LWLP promotee who was ever demoted without due process. So we think there's a practice in the police department. We urge a court to look closely at 8.343 of the charter. That contains the magic words cause for discipline. And that's what establishes their property rights. And the fact that it was three months makes no difference whatsoever. The city didn't even give them a notice that they were being released from probation. So that's just kind of an argument was made later on. But if you look at the practice of the department, they've always afforded these kinds of employees due process. You wanted to save about five minutes? Yes. Okay. You have about four and a half. Thank you for your argument, counsel. We'll hear from the city and county at this time. Ms. Lucas. Good morning. I want to support Stacey Lucas, Deputy City Attorney representing the city. Before I get into the remarks I wanted to present to the court, but I did want to respond to appellant's counsel on a couple of issues. I think he raised at the very beginning that there are four elements for an appointment, a vacant position, an eligible list, a requisition for appointment by the appointing officer, and an actual appointment by the chief. And he says all of those were present. Well, we know actually none of them were present. And, in fact, the record at page 998 through 999, one of the appellants concedes that he actually had to call somebody over at the Hall of Justice to find out where are these requisitions. And she whispered to him on the phone, you know, if you can do anything to get those going, that would be a good idea. So these people know there weren't any requisitions. They're very well aware of the fact that the civil service rules provide a very specific way to become a permanent employee in a permanent rank, and they didn't have that. The second thing I wanted to point out was I believe Your Honor had asked whether this issue is moot as to Sergeant, now Lieutenant, Stasko. And I believe counsel indicated no because of some back pay retirement dated issues. And, in fact, the record indicates that the parties have signed a stipulation waiving their right to anything in exchange for $1, waiving their right to compensatory damages. So that's not really briefed here, but I would submit to the Court that whatever the retirement backdating issue is that counsel raises would be encompassed within that compensatory damages agreement. The $1 settlement would cover back pay? Would it cover date of promotion? Yes, I believe it would cover. I believe that it would, yes, Your Honor. That could be briefed at a different time perhaps, but I just wanted to respond to that issue. And regarding probation, I believe counsel has not accurately described to the Court the rules are regarding probation. Although I did note, actually, it's not in the record. It's very easy to be able to indicate and show to the Court that the probationary period in the department is one year. And that's a matter of judicial notice, and we'd be happy to supplement that. But he's not suggesting that that's not one year, but he says there's always been due process afforded to anybody. Well, actually, what counsel said was that there was one case where a person was afforded due process, which was correct. That was a disciplinary case. And under the civil service rules, if you're probationary in your rank, you are entitled to some due process. But also under the civil service rules, and the applicable rule is in the record at page 1072, unless it's for misconduct, there isn't any process. And so he's simply incorrect. That's not what the rule says. And the rules, again, are in the record. So with no misconduct, you can be demoted without any due process. But if you have misbehaved, you get some due process. That doesn't sound exactly right. Well, that's actually what the rules provide for, however. I mean, the issue is, I believe, because if you – if there's an allegation of any kind of misconduct or wrongdoing, then you have basically a name-clearing hearing. There's a liberty interest there. But there isn't a property interest. And that's what this case is about. And there's one thing that's really clear from the record, and that is that in all the pieces of paper that you all have had to wade through and I had to carry over here, there are no documents appointing these gentlemen to these positions of lieutenant. So the question is, can the court find that they are de facto permanent employees, permanent lieutenants? Now, the city is not taking the position and never has that they don't have a property right to their rank of sergeant. And now Lieutenant Stasko, who was promoted in 2004, now has a property interest in that rank, but did not at the time. And the other two never have. Kennedy. What was this paper that they said they had? The counsel for the plaintiffs said there was a paper that was signed to put on the LWLP. Well, the paper that I'm aware of, Your Honor, the only paper that we have actually regarding these assignments is in the record, and it's a memo dated March 15, 2000 from Julie Gonzalez, the Director of Recruitment and Examination in the Police Department, to the Police Employee Groups. That's the record at page 865. Now, that is a document that specifically indicates to the employee groups that Chief Lau is about to make some temporary personnel moves. They're called appointments in here. We say that doesn't matter because it doesn't make them appointments. They're like work, like pay assignments to lieutenant, and the document goes on to say specifically, quote, it is anticipated that in all likelihood these will not result in permanent appointments from the existing eligible list, end quote. Now, why did that document come out? We submit, and I think it's supported by the record, the reason that that document came out at the direction of Chief Lau is because the department was in a unique moment in time. They had been under a consent decree for almost 20 years for the promotions. And this was going to be the first time in almost 20 years that the department was going to be making promotional appointments without the direction of the court. And so to prepare the employee groups and all of their members, of which the appellants are three, this document was put out. There were meetings. It was very clear that these were temporary assignments. They said that this never happened to anybody else, that they got a temporary assignment and then got bumped back down. Is that correct? I believe that is correct. There's nothing in the record that indicates, and I'm not aware of, where there had not been a requisition that had ultimately come and that the chief decided to assign that requisition to the individuals. But that gets to another issue, and that is, does the chief have discretion to pick who he wants? And that's something Judge Fletcher asked at the beginning here, was what could the chief do? What were the rules? And there is not a dispute that these folks were in the band. They were eligible. There's no, we don't, the city never has said that they weren't good officers, that they weren't ineligible in any way. They, just like all of these other people in the band, could have been selected and Chief Lau had full discretion to pick anyone he wanted within the band. He didn't end up picking those three. He picked three other people from that list. He temporarily put these guys into this position, and they did perform the job of lieutenant for 90 days, three months, and then they returned to their regular assignments. So the question is, is that, does that turn it into a property right? Does that obligate the city now to, does it give these folks an entitlement to that rank? And we say, no, it does not. And the reason it doesn't is, if you look at Roth, it sort of sets down, where do you find a property right? Well, the Constitution doesn't give you a property right. The property rights are found from things like state statutes, ordinances, and so forth. So, you know, that gets us to the city charter, civil service rules, and so forth. Now, council has argued, we think, disingenuously, and we think that the district court agreed, or unreasonably at least, that somehow the way the charter is phrased, it gives the appointing officer the right to just make requisitions and just obligate public money. And, of course, that's not true. You know, none of the reasonableness statute cases that we've cited would support that, and certainly the district court didn't. So, without that, we have to look at, well, what do we have? We don't have these documents, as I said. The only document we really do have is this one from Julie Gonzalez saying it's going to be temporary. And so we would submit that under Roth, these gentlemen had no entitlement to the position, and not even under Jenkins, because Jenkins, which this Court decided, was so factually different than the case at Barr. In Jenkins, you had somebody who was appointed for over five years to a position, a temporary position, but she had been there for five continuous years. She had gone through six or seven performance evaluations, evaluating the exact same criteria as all of the, quote, regular, end quote, employees in the county of Riverside who had occupied that same rank or position. And she had far exceeded the probationary period. We don't have any of that here. These gentlemen were in here for 90 days. They were in, they were out. That was it. This case is really, I think, more similar to Roth in that it's a short, it's even shorter term, and Roth, the gentleman who's the plaintiff, had a one-year contract. He worked a full year in that particular position. So we would say there simply is no property right that gives rise to any sort of due process here. And finally, if there were, then under the civil service rules, these three appellants would have been probationary employees, and under the civil service rules the chief could have just released them anyway. So they still did not have any entitlement, and that is throughout the city. That is one of the, you know, the core issues and one of the core assessments in the civil service rules and a way to measure people. So that's essentially the city's argument, unless you have questions, I'm happy to talk about. I don't see any. Thank you for your argument, counsel. Thank you. We'll hold a rebuttal argument at this time. Mr. Clisham. Yes. Thank you, Your Honor. A look at the discovery that is part of the record in request for admissions number 234, the appellants asked if Chief of Police Fred H. Loud did make a requisition to fill the position for which Plaintiff John Fuhrer was paid as a lieutenant in the San Francisco Police Department between March 25, 2000 and June 24, 2000. The response was, Defendant objects to this request in the ground that the phrase make a requisition in the context of this request is vague and ambiguous. For purpose of this request, Defendant interprets the phrase in the context and meeting of 1996 San Francisco Charter Section A8.329. Without waiving and subject to the foregoing general and specific objections, Defendant admits request for admissions number 234. Number 235 was for Plaintiff Timothy Dempsey. Number 236 was for Michael Stasko. So in discovery, the city admitted that Chief Lowe made requisitions for these three positions, and there are documents that are throughout this record that show that they were appointed. Where is that in the record? Pardon me? Where is that in the record that you just referred to? In the record? Just the ER site, if you don't mind. Okay. That's the ER is for personnel. If you don't have it right at hand, give it to the clerk at the end of argument. Okay. Yeah, sure. The actual personnel order is in the record, and that's an official document signed by Chief Lowe, and it says LWLP Promotion to Q60 Lieutenant. That's a record. Now, it's correct that it looks like the requisition wasn't processed and they never completed it, and that's their argument, that you have to complete those documents. But the completion of documents is not a requirement in the charter. The charter says that in order to make an appointment, the appointing officer shall make a requisition to the Department of Human Resources to fill it, the appointing officer shall fill the position by the appointment of one of the persons certified. Is that signed by the Chief? That's the issue that we're litigating. Was it signed by the Chief, or is it a format? Oh, pardon me? Was this document signed by the Chief that you referred to? Yes, the document is signed by the Chief. It's an official San Francisco Police Department personnel order. Transfer them to different district stations. They weren't paid as temporary assignments. It was a promotion. If our brief tries to detail, you know, page after page after page where the Deputy Chief, John Portoni, testified under oath at the arbitration that he was with Chief Lowe, he called it a promotion. He called it a promotion from the eligible list to those vacant positions. And throughout the discovery, the city admitted that the positions were vacant and that Chief Lowe filled these positions with the appellants, and they served in those positions for three months. They acquired permanent status through Charter Section 8.343, which requires cause for removal. Under the Peace Officer Bill of Rights, if you're demoted, that's a punitive action in the State of California for a police officer. It may not be punitive action for a transit operator or an administrative assistant, but it is punitive action for a police officer. They were required to follow the procedures in Charter Section 8.343, which, as I said before, contains the magic words, cause. And that gave them the property rights. They did not receive any kind of due process. They were dismissed with a phone call. And there's other issues that I didn't address, but they're all addressed in the briefs. If I could make one short argument about the Enquist case, which is an equal protection case that the Ninth Circuit decided in February of 2007, and if this Court finds that there is not a property interest, then we would request that the Court make an exception to the holding of the Enquist case under the theory and discussion of the facts in the Lucchese case, the State of California case. Okay. Yes. Thank you very much, Your Honor. Thank you for your argument. Thank both sides for their argument. The case is just argued as such.
judges: B. Fletcher, Siler , Hawkins